UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **MARTIN PAUL BROUSSARD**<br>    **LA. DOC # 114817** | **CIVIL ACTION NO. 6:11-cv-1923** |
| **VERSUS** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **ASHLEY NELSON, ET AL.** | **MAGISTRATE JUDGE HANNA** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Martin Paul Broussard, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on October 31, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the South Louisiana Correctional Center (SLCC) at Pine PrairIe, Louisiana but he complains that he was denied prompt medical care while incarcerated at SLCC in Basile; he also complains that his grievances were ignored. He sued nurse Ashley Nelson and Warden Viator seeking $500,000 in compensatory damages for "unreasonable pain and suffering."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. 1]*

Plaintiff is a prisoner in the custody of the LDOC; when the complained of events occurred, he was incarcerated at SLCC – Basile. In his original complaint, he claimed that, on some unspecified date, unspecified medication was prescribed for some unspecified condition. Between February 2 – 16, 2011, plaintiff claimed that Nurse Ashley Nelson denied him this medication.

At 2:00 p.m. on February 16, 2011, plaintiff "was coughing so hard there was an audible 'pop.'" One of plaintiff's fellow inmates advised the Dorm Officer that plaintiff needed emergency care. The initial request for assistance was apparently ignored, so 15 minutes later, the inmate and others "began demanding" that the officers obtain medical assistance for their comrade. At 5:30 p.m., Nurse Nelson examined plaintiff and then exited the dorm.

At 6:30 p.m., during the shift change, Lt. Ardoin noticed that plaintiff was in pain and was having problems breathing. Ardoin contacted Nurse Annie who went to the dorm and examined plaintiff. She contacted Dr. Hinny who instructed her to transport plaintiff to the University Medical Center in Lafayette. Plaintiff was examined by Dr. Rad who determined that plaintiff had pneumonia and that the coughing had resulted in a ruptured muscle and ligaments.

Plaintiff filed four Step One grievances, which were ignored by Warden Viator. Plaintiff was placed in lock-down/Administrative Segregation until May 18, 2011. He claimed that he was unable to timely exhaust administrative remedies with the LDOC and his attempt to obtain judicial review in Louisiana's Nineteenth Judicial District Court were denied for failing to

provide an LDOC grievance number.  He concluded his original complaint by claiming that he was exposed to unreasonable prolonged pain and suffering and physical harm.

On December 15, 2011, plaintiff requested appointment of counsel [Doc. 9]; on December 22, 2011, that motion was denied.  [Doc. 10].

### *2. Amended Complaint [Doc. 11]*

On December 16, 2011, plaintiff was instructed to amend his complaint to provide, among other things, "(1) the name of each person who allegedly violated plaintiff's constitutional rights;(2) a description of what actually occurred or what each defendant did to violate plaintiff's rights; (3) the place and date that each event occurred; and (4) a description of the alleged injury sustained as a result of the alleged violation."  On December 29, 2011, he filed an "Amendment to Clarify Claim" and alleged as follows:

On January 1, 2011, plaintiff submitted a medical request complaining of constant coughing.  A physician (not identified by plaintiff) prescribed some "cough medicine" and some other unspecified medication, and directed plaintiff to take the medication for a period of two weeks.  According to plaintiff, he was provided one dose of the "cough medicine" and then, when he requested more, he was advised by Nurse Nelson that no more was available.  A week later, the prison obtained more of the medication, but Nelson advised plaintiff to submit another request.  Apparently, on some unspecified date, the unidentified physician again prescribed "cough medicine" for the plaintiff.  Plaintiff was again advised by Nurse Nelson that the medication was unavailable.  Thereafter, between January 25 and February 16, 2011, plaintiff submitted three requests to see the physician, which were apparently unheeded.

3

On February 16, 2011, Nurse Nelson was summoned to the dorm to examine plaintiff. She examined him and concluded that his condition was not serious. According to plaintiff, he was in severe pain and unable to breathe properly. Plaintiff claims that this incident establishes Nelson's deliberate indifference. As shown above, in his original complaint plaintiff claimed that plaintiff's condition began to deteriorate at 2:00 p.m. and that Nelson examined him at approximately 5:30 p.m.; he was later examined by Nurse Annie at the request of a corrections officer, and, at 6:30 p.m., prison officials were instructed to transport him to the hospital where he ultimately obtained a diagnosis and treatment.

Plaintiff claimed that Warden Viator's liability arose because "he ignored any ARP complaints and possibly arranged to place me in lock down to block me on this complaint" and because he allows "his officers and staff to treat LDOC inmates with inhuman indifference."

Plaintiff again requested appointment of counsel.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. § 1983, the court is obliged to evaluate the complaint and dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Nevertheless, in order to be afforded the benefits of this assumption, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has managed to file an original complaint; when thereafter he was directed to amend his complaint, he did so.

Together, plaintiff's original and amended complaints outline the following scenario:

1. On January 1, 2011 plaintiff submitted a medical request complaining of chronic coughing; he was apparently examined by a physician shortly thereafter, and unspecified medication, including "cough medicine" was prescribed for use over a period of two weeks.

2. Plaintiff was provided the medication initially, but thereafter, on unspecified dates and times, his request for more medication were denied by Nurse Nelson who advised that the medication was not available at that time.

3. Approximately one week later – presumably January 8, 2011 – more medication was obtained by the prison, however, plaintiff was advised to submit a request. (Plaintiff did not allege whether he complied with that directive, or, whether he was ultimately provided medication.)

4. Sometime between January 8 and February 2, 2011, plaintiff was apparently examined again by an unidentified physician. Unspecified medication was again ordered, however, plaintiff claims that between February 2and 16, 2011, Nurse Nelson denied him the medication. Plaintiff also claimed that between January 25 and February 16, 2011, he submitted three additional requests to see a physician.

5. At 2:00 p.m. on February 16, 2011, plaintiff had a severe coughing spell; his fellow inmates summoned Nurse Nelson who examined him at 5:30 p.m. and concluded that his condition did not require further medical intervention at that time.

6. Thereafter, at 6:30 p.m., plaintiff was examined by Nurse Annie who described her observations to Dr. Hinny. This physician directed the Nurse to transport plaintiff to a nearby hospital. Plaintiff was examined by Dr. Rad who concluded that plaintiff had pneumonia and

had suffered muscle or ligament strains during his coughing fit. He was apparently treated and his condition apparently improved.

   7.  On unspecified dates, plaintiff submitted four Step-One Grievances to Warden Viator. According to plaintiff, these grievances were ignored. He was placed in Administrative Segregation on May 18, 2011 and claims that this placement interfered with his ability to properly exhaust his grievances with the LDOC. His failure to properly exhaust administrative remedies apparently resulted in the dismissal of his petition for judicial review filed in Louisiana's Nineteenth Judicial District Court.

*2.*  *Medical Care*

Plaintiff does not claim that medical care was denied; he complains instead that it was delayed. Plaintiff is a convict – an inmate in the custody of the LDOC. His medical care claims arise under the Eighth Amendment's prohibition of cruel and unusual punishment. A delay in providing medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The facts underlying a claim of deliberate indifference must clearly establish the serious medical need in question and the alleged indifference of the prison officials. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat

him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

With regard to defendant Nurse Nelson, plaintiff seems to argue two separate but related medical care claims. First, plaintiff claims that she denied him prescribed "cough medicine" on unspecified occasions between January 1 and February 16, 2012. However, according to the pleadings, the medication was denied, not because of some wanton disregard on Nelson's part, but rather because the prison had none available. Plaintiff has not alleged facts sufficient to establish that the short-fall was occasioned by the deliberate indifference of Nurse Nelson.

Second, plaintiff complains that Nurse Nelson failed to respond to his medical emergency at 2:00 p.m. and then failed to send him to the hospital for treatment when she examined him at 5:30 p.m. on February 16, 2011. Plaintiff's pleadings suggest that he disagreed with her diagnosis of his condition and, disagreement with diagnosis and treatment cannot support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado*, 920 F.2d at 321. With regard to the action and inaction of Nurse Nelson, plaintiff has alleged only a conclusive claim of deliberate indifference. At worst, it would appear that Nelson's treatment, or lack thereof, was negligent, and that finding is insufficient to warrant the imposition of Section 1983 liability.

    *3.*      *Grievances*

In his original complaint, plaintiff named Warden Viator as a defendant. However, he alleged no specific fault on the part of the Warden. He was instructed to amend his complaint to allege fault or dismiss the defendant. In his amended complaint, he faulted Viator for failing to respond to the four Step-One Grievances petitioner submitted to him.

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, as is alleged here, does not violate constitutional *minima*. *See Taylor v. Cockrell*, 92 Fed.Appx. 77, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (citing *Sandin*, *supra*, and finding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily

9

established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Further, plaintiff implies that Viator's failure to respond to his four Step-One grievances had a negative impact on the lawsuit he filed in the Nineteenth Judicial District Court. It is unclear why plaintiff submitted four Step-One grievances; it is also unclear why he did not seek further review with the LDOC when Viator failed to respond to his grievances. Pursuant to 22 La. ADC, Pt. 1, §325(J) (which sets forth the rules for administrative remedies procedures for LDOC inmates), prisoners commence the grievance process by filing a written claim to the warden. The warden must respond within forty days and, according to the rules, "expiration of response time limits shall entitle the offender to move on to the next step in the process...." 22 La. ADC, Pt. 1, §325(J)(4).

In other words, when Warden Viator failed to timely respond to plaintiff's grievance, it was thereafter plaintiff's obligation to obtain review by filing his second step grievance with the appropriate authority. Plaintiff has failed to state a claim with respect to Warden Viator.

Finally, plaintiff also implies that his confinement to administrative segregation denied him his right of access to the Louisiana courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322,

325 (5th Cir.1999); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).  The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement."  *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993); *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir. 1997); and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).  Plaintiff has not shown how his ability to prepare and transmit legal documents was in any way been inhibited by his confinement to administrative segregation.

In any event, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d at 1328 (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)).  This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim."  *Lewis*, 518 U.S. at 354.  Plaintiff has not established that he was thwarted in any way by Warden Viator from presenting a legitimate claim for relief to either the Nineteenth Judicial District Court or this Court.

*4.      Plaintiff's Second Motion for Appointment of Counsel*

As noted, plaintiff previously requested appointment of counsel. [Doc. 9]. That motion was denied on December 22, 2011. [Doc. 10]. Plaintiff again asks for counsel. However, this second motion should be denied for the same reasons set forth in the original order. [Doc. 10].

*Recommendation*

Therefore,

Plaintiff's second request for appointment of counsel is **DENIED;** and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

**conclusions accepted by the District Court, except upon grounds of plain error.** See

*Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

      Signed at Lafayette, Louisiana on April 24, 2012.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE